# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

UNITED STATES OF AMERICA    )
                               )
v.                                   )          NO. 2:05-CR-108
                               )
PATRICK  TAYLOR               )
                               )

## O R D E R

This criminal case is before the Court on the government's objections to the presentence investigation report.   This order will supplement and expand upon the Court's bench opinion delivered orally from the bench on November 28, 2006.  The government has raised three objections to the presentence investigation report:   (1)   An objection to the amount of loss;  (2)  an objection to the omission of an increase in the offense level for the receipt of stolen property by a person in the business of receiving and selling stolen property; and (3)  an objection to the omission of any increase in the offense level for being an organizer, leader, manager, or supervisor in the criminal activity.

The Court has heard evidence presented by the parties, and the arguments of counsel on these objections.   After careful consideration of the issues raised by the government, the Court is of the opinion that the government's

objections should be sustained in part and overruled in part.

**Amount of Loss**

The government submits that the loss intended by the defendant was in excess of $10,000.00 based upon a statement in the agreed factual basis indicating that the defendant conspired with Larry Joe Dodgin to spend at least $25,000.00 on stolen property. According to the government, therefore, defendant's offense level should have been raised by four (4) levels pursuant to U.S.S.G. § 2B1.1(c)(1)(C) [loss of more than $10,000.00 but not more than $30,000.00] rather than 2 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(B) [loss of more than $5,000.00 but not more than $10,000.00].The proof presented at the hearing before this Court, and tape recorded conversations involving the defendant, Larry Joe Dodgin, and the undercover agent, establish that the government, which controlled the amount of merchandise which the defendant purchased in the transaction for which the defendant was indicted and ultimately entered a plea of guilty, amounted to less than $10,000.00 worth of merchandise. Nevertheless, the government correctly points out that "loss" in the Sentencing Guidelines includes "intended loss."

In calculating what the intended loss is in a particular case, the Court must consider three factors. "First, . . . the defendant must have intended the loss.

Second, it must have been possible for the defendant to cause the loss. Third, the

defendant must have completed or been about to complete but for interruption, all

of the acts necessary to bring about the loss." *United States v. Watkins*, 994 F. 2d

1192 (6th Cir. 1993). The second prong of this test was essentially overruled by

the revision of U.S.S.G. § 2B1.1 in November, 2001, so that loss which "would

have been impossible or unlikely to occur," is included as an intended loss.

However, consideration of the remaining two prongs remains a requirement.

*United States v. Cage*, 134 Fed. Appx. 833, 836 (6th Cir. 2005).

The Court **FINDS** that the government has failed to prove the final

prong of the original *Watkins* test, that is, that the defendant completed or was

about to complete, but for the interruption, all acts necessary to bring about the

loss. The proof established that defendant purchased approximately $9,000.00

worth of stolen merchandise and that a co-conspirator informed the undercover

agent that defendant would spend $25,000.00 on stolen goods.[1] The proof

reflected that the undercover agent "shorted" the defendant on the merchandise he

received, and while there was an indication that the undercover agent would make

up the difference in future dealings, there was never any indication that Taylor,

having been shorted by the undercover agent, would assent to any future dealings,

---

[1] At $0.10 on the dollar, this would represent $250,000 worth of stolen merchandise.

and certainly there had been no specific planning for any future deals, but only general discussions between Larry Joe Dodgin and the undercover agent of Taylor's potential interest. The proof before this Court is insufficient to establish that, but for the interruption of the defendant's arrest, the acts necessary to bring about a loss in excess of $10,000.00 would have occurred. Accordingly, the government's objection to the amount of loss used in the presentence investigation report to calculate defendant's offense level is **OVERRULED**.

**Business of receiving and selling stolen propety**

The government has objected to the omission in the presentence investigation report of a two-level increase in the offense level for receiving stolen property by a person in the business of receiving and selling stolen property, that is, a "fence." *See* U.S.S.G. § 2B1.1(b)(4). In determining whether this enhancement applies, the Court must determine (1) if stolen property was bought and sold and (2) if the stolen property transaction encouraged others to commit property crimes. *United States v. Warshawsky*, 20 F. 3d 204, 215 (6th Cir. 1994).

The defendant suggests that his conviction represents a one time transaction and, thus, the enhancement does not apply; however, it is clear that the Sixth Circuit's test is not that restrictive. In fact, the *Warshawsky* court

specifically rejected a test which examined the "regularity" of a defendant's operation. *Id.* Further, defendant suggests that he could not be a fence because he was otherwise legitimately employed. The Sixth Circuit has likewise rejected this proposition. *United States v. Koehler*, 24 F. 3d 867, 871 (6th Cir. 1994).

Clearly the defendant purchased from the undercover agent what he believed to be stolen property with the intent of reselling it. Even a one time purchase and subsequent sale of stolen property by its very nature encourages the commission of property crimes, just as Larry Joe Dodgin was encouraged to effectuate the transfer of stolen property from the undercover agent to the defendant due to the defendant's willingness to purchase the stolen property for resale.

Even if the Sixth Circuit test for applying the enhancement of U.S.S.G. § 2B1.1(b)(4) requires proof that the conviction represents more than a one time transaction, that is, proof that defendant has engaged in some sort of an ongoing dealing in stolen property, such proof exists in this case. First of all, there were 236 separate items of stolen property acquired by the defendant. Secondly, while the defendant denies it, there is proof that defendant used a food concession stand to traffic in stolen property and that trafficking in stolen property was at least a part of his otherwise legitimate business activity. A review of telephone conversations between Larry Joe Dodgin and Patrick Taylor reflect that Dodgin

contacted Taylor on April 26, 2005 inquiring as to when Taylor would take the onion wagon out <u>again</u>.[2]  Dodgin inquired as to when Taylor might want some merchandise to sell, indicating that he could get it "wholesale."   Given the context of this telephone conversation and its close proximity in time to the actual delivery of the stolen goods to the defendant, the Court is convinced by a preponderance of the evidence that when Taylor was initially contacted by Dodgin in this investigation, Taylor obviously had already been involved in the sale of stolen merchandise.  Additionally, Dodgin, who served as the middle man between Taylor and the undercover agent, indicated to the undercover agent on at least two occasions that Taylor was interested in an ongoing enterprise with the undercover agent whereby he would purchase stolen merchandise for resale, and was even so specific as to request that Taylor receive "seasonal" merchandise.

Instructive on this issue is the case of *United States v. Koehler*, 24 F. 3d 867 (6th Cir. 1994).  In *Koehler*, the government proved only that the defendant was engaged in two transactions of selling stolen automobile parts.  Koehler contended that the enhancement did not apply to him because he was otherwise a legitimate businessman, who had only engaged in two transactions  involving stolen property in 24 years in the auto parts business.  Nevertheless, the Sixth

---

[2]  The onion wagon was apparently an otherwise legitimate business operated by Patrick Taylor and David Ramsey which sold food concessions at various events.

Circuit held that the enhancement of U.S.S.G. § 2B1.1(b)(4) applied, finding that Koehler's criminal activity was not a sporadic event, but at least a part of Koehler's business. Likewise, it appears that the purchase and sale of stolen merchandise was at least a part of this defendant's business activities. Accordingly, the government's objection to the omission in the presentence investigation report of a two level enhancement under U.S.S.G. § 2B1.1(b)(4) is **SUSTAINED** and his offense level will be increased by two (2) levels.

## Organizer, Leader, Manager or Superviser in a criminal activity

The proof presented to the Court reflects that Patrick Taylor directed his brother, Jarrod Taylor, to pick up the stolen merchandise, and that Jarrod Taylor, at his brother's direction, did so, for which Jarrod Taylor was ultimately indicted and convicted in this Court. There has been no evidence presented to the Court that Jarrod Taylor was conspiring with Patrick Taylor in the actual resale of the stolen merchandise, nor was there any evidence that Jarrod Taylor was to receive any proceeds from the sale of the stolen merchandise. In fact, this Court observed at the sentencing hearing of Jarrod Taylor that he, absent the direction of his brother, would not likely have been involved in this particular criminal activity.

While acknowledging that his brother, Jarrod Taylor, acted at his direction, the defendant nevertheless argues that such conduct does not qualify him for the enhancement of U.S.S.G. § 3B1.1(c). Relying on a Second Circuit case, *United States v. McGregor*, defendant argues that this was simply an isolated act providing no basis for the enhancement.

The enhancement under § 3B1.1(c) is appropriate "[w]here the defendant exerts control over at least one participant in a supervisory, managerial, leadership, or organizational capacity." *United States v. Gort-Didonato*, 109 F. 3d 318, 321 (6th Cir. 1997). The Court is required to consider the defendant's exercise of decision making authority, the recruitment of accomplices, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. *Id.* It is clear to this Court that Patrick Taylor was the sole decision making authority and that Jarrod Taylor acted at his direction, he recruited his brother as an accomplice, and the defendant intended for this illegal activity to be an ongoing illegal business. The defendant exercised control and authority over his brother, who when told to do something by Patrick Taylor, did so, regardless of the fact that there was no specific promise of any remuneration from Patrick Taylor. Patrick Taylor was the owner of the instrumentality by which the stolen merchandise would be sold and all proof indicates that he was the only person to

gain from the profit of the sale of the stolen merchandise. Nothing indicates that

Jarrod Taylor was involved in the planning or organization of the criminal activity.

Considering the exercise of decision making authority by the

defendant, his recruitment of his brother as an accomplice in criminal activity, the

degree of control and authority exercised by Patrick Taylor over others and

viewing the activities carried out by Jarrod Taylor at the direction of Patrick Taylor

against the entire nature and scope of the illegal activity involved here, the Court

**HOLDS** that the government's objection to the omission in the presentence

investigation report of a two-level enhancement under § 3B1.1(c) is **SUSTAINED**.

Given the Court's findings, the defendant's guideline offense level is

now ten (10), with an advisory guideline sentencing range of six (6) to twelve (12)

months.

**SO ORDERED**.

ENTER:

<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE